UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| AMISSA HARRIS, Individually and for Others Similarly Situated<br><br>v.<br><br>ATRIUM HEALTH, INC. and THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY d/b/a ATRIUM HEALTH | Case No. 3:23-cv-456<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

# ORIGINAL COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Amissa Harris (Harris) brings this collective action to recover unpaid overtime and other damages from Atrium Health, Inc. (Atrium) and The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health (CMHA) (together, Defendants).

2. Defendants employed Harris as a Medical Assistant at Defendants' One Health facility in Huntersville, North Carolina.

3. Like the Putative Class Members (as defined below), Harris regularly worked more than 40 hours in a week.

4. But Defendants did not pay these employees for all the hours they worked.

5. Instead, Defendants automatically deducted 30 minutes a day from Harris's and the Putative Class Members' work time for so-called meal breaks.

6. Harris and the Putative Class Members were thus not paid for that time.

7. But Harris and the Putative Class Members do not actually receive *bona fide* meal breaks.

8. Instead, Defendants require Harris and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subject them to work-related interruptions during their unpaid "meal breaks."

9. Defendants' auto-deduction policy violates the Fair Labor Standards Act (FLSA) by depriving Harris and the Putative Class Members of overtime pay for all overtime hours worked.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over Atrium because Atrium is a domestic corporation headquartered in Charlotte, North Carolina.

12. This Court has general personal jurisdiction over CMHA because CMHA is a domestic municipal hospital authority headquartered in Charlotte, North Carolina.

13. Venue is proper because Defendants maintain their shared headquarters in Charlotte, North Carolina, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Defendants employed Harris as a Medical Assistant at Defendants' One Health facility in Huntersville, North Carolina from approximately March 2021 until September 2022.

15. Throughout her employment, Defendants classified Harris as non-exempt and paid her on an hourly basis.

16. Throughout her employment, Defendants subjected Harris to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

17. But throughout her employment, Harris did not actually receive *bona fide* meal breaks.

18. Harris's written consent is attached as **Exhibit 1**.

19. Harris brings this action on behalf of herself and other similarly situated hourly, non-exempt patient care employees who worked for, or on behalf of, Defendants and were subject to Defendants' automatic meal break deduction policy.

20. Defendants automatically deduct 30 minutes a day from these employees' recorded work time (and wages) for so-called "meal breaks."

21. But these employees do not actually receive *bona fide* meal breaks.

22. Instead, Defendants require these employees to remain on-duty and perform compensable work through their shifts, including during their unpaid "meal breaks."

23. Thus, Defendants uniformly deprive these employees of overtime pay for all hours worked during after 40 in a workweek in violation of the FLSA.

24. The putative collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of Defendants who received a meal period deduction at any time during the past 3 years ("Putative Class Members").**

25. Atrium is a North Carolina not-for-profit corporation that maintains its headquarters in Charlotte, North Carolina.

26. Atrium may be served with process by serving its registered agent: **Brett J. Denton, 1111 Metropolitan Avenue, Suite 600, Charlotte, North Carolina 28204**, or wherever he may be found.

27. CMHA is a North Carolina municipal hospital authority under the North Carolina Hospital Authorities Act that maintains its headquarters in Charlotte, North Carolina.

28. CMHA is the governing board of Atrium and does business under the name of Atrium Health.

29. CMAH may be served with process by serving its registered agent: **Brett J. Denton, 1111 Metropolitan Avenue, Suite 600, Charlotte, North Carolina 28204**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

30. At all relevant times, Atrium was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all relevant times, CMHA was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

32. At all relevant times, Atrium, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

33. At all relevant times, CMHA, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

34. At all relevant times, Atrium was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Atrium, as a hospital network, is engaged in the operation of a hospital and is an institution primarily engaged in providing healthcare services.

35. At all relevant times, CMHA was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Atrium, as a hospital network, is engaged in the operation of a hospital and is an institution primarily engaged in providing healthcare services.

36. At all relevant times, Atrium was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §

203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, medical tools, and personal protective equipment – that have been moved in or produced for commerce.

37. At all relevant times, CMHA was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, medical tools, and personal protective equipment – that have been moved in or produced for commerce.

38. At all relevant times, Atrium has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

39. At all relevant times, CMHA has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

40. At all relevant times, Harris and the Putative Class Members were Defendants' "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

41. At all relevant times, Harris and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

42. Defendants uniformly deducted 30 minutes/shift from Harris's and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

43. As a result, Defendants failed to pay Harris and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

- 5 -

Case 3:23-cv-00456-RJC-SCR    Document 1    Filed 07/24/23    Page 5 of 19

44. Atrium's automatic meal break deduction policy, which deprives Harris and the Putative Class Members of overtime compensation for all overtime hours worked during the workweeks in which they work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

45. Atrium bills itself as "an integrated, nonprofit health system with more than 70,000 [employees] serving patients at 40 hospitals and more than 1,400 care locations."[1]

46. CMHA is the governing board of Atrium and does business under the name of Atrium Health.[2]

47. Thus, Atrium and CMHA have shared common ownership and/or management.

48. Indeed, Atrium and CMHA have a shared corporate headquarters in Charlotte, North Carolina.

49. Likewise, Atrium and CMHA have a shared and/or centralized human resources department.

50. Atrium and CMHA also perform the same or similar activities: operating hospitals to provide patient care services.

51. Atrium and CMHA have shared or common ownership and management of the healthcare facilities where Harris and the Putative Class Members work.

52. This is because Atrium and CMHA are a unified operation directed to accomplish their shared business objective of operating healthcare facilities.

53. Thus, Atrium and CMHA are, in effect, a single enterprise under the FLSA.

---

[1] https://atriumhealth.org/about-us (last visited July 24, 2023).
[2] *See* https://atriumhealth.org/about-us/governing-boards (last visited July 24, 2023).

54. To complete their shared business objective, Defendants employ patient care workers, including Harris and the Putative Class Members, to work in the healthcare facilities they own and/or operate.

55. Together, Atrium and CMHA maintain control, oversight, and direction of Harris and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

56. Atrium and CMHA control Harris's and the Putative Class Members' rates and methods of pay, their schedules and assignments, as well as their patient care work.

57. Atrium and CMHA require Harris and the Putative Class Members to follow their uniform policies, procedures, and protocols.

58. Indeed, Harris's and the Putative Class Members' patient care work must strictly adhere to the uniform quality standards put in place by Atrium and CMHA.

59. Atrium and CMHA supervise and control Harris's and the Putative Class Members' patient care work and prohibit these employees from straying from their uniform procedures, plans, protocols, and specifications.

60. Atrium and CMHA possess the authority to hire, fire, and discipline Harris and the Putative Class Members.

61. Atrium and CMHA maintain employment records for Harris and the Putative Class Members.

62. Without the patient care work Harris and the Putative Class Members perform, Defendants would not be able to complete their shared business objective of operating healthcare facilities.

63. Thus, Harris's and the Putative Class Members' work is integral to, and simultaneously benefits, Defendants' common business objectives.

64. In sum, Atrium and CMHA employed, jointly or otherwise, Harris and the Putative Class Members during the relevant period.

65. Defendants uniformly classify the patient care employees that work in their healthcare facilities, including Harris and the Putative Class Members, as non-exempt and pay them on an hourly basis.

66. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

67. For example, Defendants employed Harris as a Medical Assistant at Defendants' One Health facility in Huntersville, North Carolina from approximately March 2021 until September 2022.

68. As a Medical Assistant, Harris's primary responsibilities included providing direct patient care to the patients, such as rooming patients, completing patient intakes, monitoring patients, charting treatments and patient histories, prepping patients for lab work, administering vaccines, and assisting doctors and other patient care staff.

69. Throughout her employment, Defendants classified Harris as non-exempt and paid her on an hourly basis.

70. Throughout her employment, Defendants subjected Harris to their common practice of automatically deducting 30 minutes a day from her recorded work time and wages for so-called "meal breaks."

71. But throughout her employment, Harris did not actually receive *bona fide* meal breaks.

72. Harris and the Putative Class Members perform their jobs under Defendants' supervision and use materials, equipment, and technology approved and supplied by Defendants.

73. Defendants require Harris and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

74. At the end of each pay period, Harris and the Putative Class Members receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

75. Defendants require Harris and the Putative Class Members to record their hours worked using Defendants' timeclock system.

76. Further, Defendants subject Harris and the Putative Class Members to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

77. Specifically, Defendants automatically deduct 30 minutes a day from Harris's and the Putative Class Members' recorded work time and wages for "meal breaks."

78. Defendants automatically deduct this time regardless of whether Harris and the Putative Class Members actually receive full, uninterrupted, 30-minute meal breaks.

79. Indeed, Defendants simply assume Harris and the Putative Class Members receive *bona fide* meal breaks each shift they work.

80. But Defendants fail to provide Harris and the Putative Class Members with *bona fide* meal periods.

81. And Harris and the Putative Class Members do not actually receive *bona fide* meal breaks.

82. Instead, Defendants require Harris and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

83. And Defendants continuously subject Harris and the Putative Class Members to work interruptions during their unpaid meal periods.

84. Because of these constant work interruptions, Harris and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

85. Rather, during their unpaid "meal breaks," Harris and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

86. Thus, Harris and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Defendants'—not these employees'—shared predominant benefit.

87. This unpaid time is compensable under the FLSA because Defendants knew, or should have known, that (1) Harris and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on Defendants' premises, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for Defendants' shared predominant benefit.

88. Defendants fail to exercise their shared duty as Harris's and the Putative Class Members' employer(s) to ensure these employees are not performing work that Defendants do not want performed during their unpaid "meal breaks."

89. And Defendants know Harris and the Putative Class Members routinely work "off the clock" during their unpaid meal breaks because Defendants expect and require them to do so.

90. In fact, Harris and the Putative Class Members repeatedly complained to Defendants' management, HR, and their supervisors about being forced to work during their unpaid "meal breaks."

91. Despite accepting the benefits, Defendants do not pay Harris and the Putative Class Members for the compensable work they perform during their "meal breaks."

92. Thus, under Defendants' uniform automatic meal break deduction policy, Harris and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked over 40 hours in violation of the FLSA.

93. Harris worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

94. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

95. Indeed, Harris and the Putative Class Members typically work 8-to 12-hour shifts for 4-5 days a week.

96. And Harris and the Putative Class Members are also required to regularly work during their unpaid meal breaks "off the clock" to complete their job duties and patient care responsibilities for Defendants' shared predominate benefit.

97. As a result, Harris and the Putative Class Members work in excess of 40 hours in a typical workweek.

98. When Harris and the Putative Class Members work more than 40 hours in a workweek, Defendants do not pay them overtime wages for all overtime hours worked because Defendants fail to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek in willful violation of the FLSA.

**COLLECTIVE ACTION ALLEGATIONS**

99. Harris incorporates all other paragraphs by reference.

100. Harris brings her claims on behalf of herself and the Putative Class Members as a collective action under Section 216(b) the FLSA.

101. The Putative Class Members were victimized by Defendants' pattern, practice, and/or policy of automatically deducting time from employees' recorded hours worked and wages for "meal breaks" that are not *bona fide*, which is in willful violation of the FLSA.

102. Other Putative Class Members worked with Harris and indicated they were paid in the same manner, performed similar work, and were subject to Defendants' same automatic meal break deduction policy.

103. Based on her experience with Defendants, Harris is aware Defendants' illegal practices were imposed on the Putative Class Members.

104. The Putative Class Members are similarly situated in all relevant respects.

105. Even if their precise job duties and location might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

106. Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent collective treatment.

107. Rather, the Putative Class is held together by Defendants' uniform automatic meal break deduction policy that systematically deprived Harris and the Putative Class Members of overtime pay for all hours worked after 40 in a workweek.

108. Defendants' failure to pay these employees overtime wages at the rates required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

109. Defendants' records reflect the number of hours the Putative Class Members recorded they worked each week.

110. Defendants' records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

111. The back wages owed to Harris and the Putative Class Members can be calculated using the same formula applied to the same records.

112. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

113. Therefore, the issue of damages does not preclude collective treatment.

114. Harris's experiences are therefore typical of the experiences of the Putative Class Members.

115. Harris has no interests contrary to, or in conflict with, the Putative Class Members.

116. Like each Putative Class Member, Harris has an interest in obtaining the unpaid overtime wages owed under federal law.

117. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

118. Absent this collective action, many Putative Class Members will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

119. Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

120. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

121. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

122. Among the common questions of law and fact are:

a. Whether Defendants engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

b. Whether Defendants' automatic meal break deduction policy deprived Harris and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

c. Whether Defendants failed to pay Harris and the Putative Class Members overtime for all hours worked after 40 in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA;

d. Whether Defendants knew, or had reason to know, Harris and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA;

e. Whether Defendants' decision not to pay Harris and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

f. Whether Defendants' violations of the FLSA were willful.

123. Harris knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

124. As part of its regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Harris and the Putative Class Members.

125. Defendants' illegal automatic meal break deduction policy deprived Harris and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

126. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

127. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

128. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' business and personnel records.

### DEFENDANTS' FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

129. Harris incorporates all other paragraphs by reference.

130. Defendants knew the patient care employees that worked at their various healthcare facilities, including Harris and the Putative Class Members, were their employees.

131. Defendants knew Harris and the Putative Class Members were non-exempt employees entitled to overtime because Defendants uniformly classified them as such.

132. Defendants knew Harris and the Putative Class Members were their hourly employees because Defendants uniformly paid them on an hourly basis.

133. Defendants knew they were subject to the FLSA's overtime provisions.

134. Defendants knew the FLSA required them to pay non-exempt employees, including Harris and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek.

135. Defendants knew Harris and the Putative Class Members worked more than 40 hours in a workweek because Defendants required these employees to record their hours worked using their timeclock system.

136. Defendants knew the FLSA required them to pay hourly, non-exempt employees, including Harris and the Putative Class Members, for all hours these employees performed compensable work.

137. Defendants knew that, as Harris's and the Putative Class Members' employer(s), they had a shared duty to ensure these employees were not performing work that Defendants did not want performed during their unpaid "meal breaks."

138. Defendants knew Harris and the Putative Class Members did not actually receive *bona fide* meal breaks.

139. Defendants knew Harris and the Putative Class Members regularly worked during their unpaid meal breaks because Defendants expected and required them to do so.

140. Defendants knew Harris and the Putative Class Members regularly spent their meal breaks substantially performing their normal patient care job duties for Defendants' shared predominant benefit.

141. Indeed, Harris and the Putative Class Members repeatedly complained to Defendants' management, HR, and their supervisors about being forced to work during their unpaid "meal breaks."

142. Thus, Defendants knew Harris and the Putative Class Members performed compensable work during their unpaid meal breaks.

143. Nonetheless, Defendants automatically deducted 30 minutes a day from Harris's and the Putative Class Members' recorded work time for "meal breaks," regardless of whether they actually received *bona fide* meal breaks.

144. Thus, Defendants knew, should have known, or recklessly disregarded the fact that they did not pay Harris and the Putative Class Members for all hours these employees performed compensable work, including during their unpaid meal breaks.

145. In other words, Defendants knew, should have known, or recklessly disregarded the fact that they failed to pay Harris and the Putative Class Members overtime wages for all overtime hours worked, including hours worked during their unpaid meal breaks, in violation of the FLSA.

146. Defendants' failure to pay Harris and the Putative Class Members overtime for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime for all overtime hours worked made in good faith.

147. Defendants knowingly, willfully, and/or in reckless disregard carried out their illegal auto-deduction policy that deprived Harris and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

148. Harris incorporates all other paragraphs by reference.

149. Harris brings her FLSA claim as a collective action on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

150. Defendants violated, and are violating, the FLSA by employing non-exempt employees (Harris and the Putative Class Members) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without paying such employees overtime wages for all the hours they worked after 40 in a workweek, including hours worked "off the clock" during these employees' unpaid "meal breaks."

151. Defendants' unlawful conduct harmed Harris and the Putative Class Members by depriving them of the overtime wages they are owed.

152. Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Harris and the Putative Class Members overtime compensation for all overtime hours worked.

153. Accordingly, Harris and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

154. Harris demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Harris, individually and on behalf of the Putative Class Members, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. An Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Harris and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid compensation;

    c. Judgment awarding Harris and the Putative Class Members all unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

    d. An Order awarding attorney's fees, costs, and expenses;

    e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted this the 24th day of July, 2023

By: /s Tamara Huckert
Christopher Strianese, NC Bar No. 46918
chris@strilaw.com
Tamara Huckert, NC Bar No. 35348
tamara@strilaw.com
**STRIANESE HUCKERT LLP**
3501 Monroe Rd.
Charlotte, North Carolina 28205
Telephone: 704-966-2101

Michael A. Josephson*
mjosephson@mybackwages.com
Andrew W. Dunlap*
adunlap@mybackwages.com
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: 713.352.1100
Facsimile: 713.352.3300

Richard J. (Rex) Burch*
rburch@brucknerburch.com
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: 713.877.8788
Facsimile: 713.877.8065

William C. (Clif) Alexander*
clif@a2xlaw.com
Austin W. Anderson*
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: 361.452.1279
Facsimile: 361.452.1284

*Pro Hac Vice Applications Forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**

- 19 -

Case 3:23-cv-00456-RJC-SCR    Document 1    Filed 07/24/23    Page 19 of 19